STATE OF MINNESOTA ex rel. SISTERS OF THE ORDER OF ST. BEN-
EDICT and Another v. GEBHARD WILLRICH.

May 3, 1898.

Nos. 10,957—(28).

**District Court—Jurisdiction—Certiorari to Probate Court.**

*Held*, that the district courts of the state have jurisdiction to issue writs of certiorari to probate courts, to review their judgments and decrees not appealable.

**Probate Court—Decree Assigning Residue of Estate—Appeal—Certiorari.**

*Held*, further, that a decree of the probate court assigning the residue of the estate of a decedent is not appealable, and certiorari will lie to review it.

**Will — Devise of Real Estate — Construction — Vested Remainder in Fee.**

A testatrix devised the residue of her real estate to her husband for life, and after his death it was to be divided equally between her two children, and then added this clause: "None of my children, or their heirs, shall have any right on my residue property until the death of my beloved husband." *Held*, that each of the children took a vested remainder in fee in the real estate as of the date of their mother's death.

Appeal by Frederick J. Will from an order of the district court for Ramsey county, Otis, J., directing that the final decree of distribution of the probate court for that county in the estate of Katherina Will be quashed. The facts are stated in the opinion. Affirmed.

*Horton & Denegre*, for appellant.

*Theo. Bruener*, for respondents.

START, C. J.

The district court issued a writ of certiorari to the judge of the probate court for the county of Ramsey, to review the final judgment or decree assigning the residue of the estate (consisting of real property) of Katherina Will, who died testate. A motion was made to quash the writ on the grounds that the district court had no jurisdiction to issue it, and, further, that the decree sought to be reviewed by the writ was appealable. The motion was denied,

the case heard on the merits, and the appellant appealed from an order quashing the decree of the probate court.

The question as to the jurisdiction of the district court to issue the writ is here urged. The claim that the district courts of the state have no power to issue writs of certiorari is without merit. Laws 1897, c. 7, vests the district courts of this state with concurrent jurisdiction to award writs of certiorari, when necessary to the exercise of the powers with which they are vested and to the due administration of justice. The district court is made a court of appeal from the probate court, by statute, pursuant to the constitution (G. S. 1894, § 4833); hence it has power to review the judgments and decrees of the probate court, by certiorari, in cases where no appeal is given by statute.

This brings us to the question whether an appeal lies from the decree here in question. G. S. 1894, § 4665, subd. 6, provides that an appeal may be taken from a decree by which a legacy or distributive share exceeding $20 is allowed, or payment thereof directed or refused. If the decree in question is appealable, it is by virtue of this section.

The words "legacy or distributive share," in legal nomenclature, refer only to personal estate. They have, in law, a settled and definite meaning. A legacy is a gift of personalty by will, while a devise is a gift of real property by will. A statute of distribution is one which regulates the distribution of the personal estate of intestates, while a statute of descent is one which regulates the transmission of real estate of intestates by inheritance to their heirs. The words "legacy or distributive share," however, are sometimes used as referring to both real and personal property. Unless these words in this statute are used in this popular sense, it is clear that the statute cannot be construed as giving an appeal from a final decree of the probate court assigning the residue of the real estate of a decedent. Words used in a statute are to be construed according to the common and approved usage of the language, but technical words, which have acquired a particular meaning in the law, shall be construed according to such meaning. G. S. 1894, § 255.

In view of the settled legal meaning of the words "legacy or

distributive share," which has obtained for centuries, and the further fact that our Probate Code was framed by lawyers, it is clear that the words in this statute were not intended to be used in a loose and popular sense, as referring to both personal and real property.

But all doubt, if any there can be, upon this question, is put at rest by the history of the statute. Its original was R. S. 1851, c. 69, art. 3, § 43, subd. 4; and the words therein, "legacy or distributive share," necessarily have now the same meaning that they did when the statute was first enacted. That they were then used in their legal, and not popular, meaning, and that the statute did not give an appeal from a final judgment or decree assigning the residue of the estate of a decedent, is certain, because at the same time another statute was enacted, expressly giving an appeal from such judgment or decree. Id. c. 59, § 17. Both of these statutes were continued in force until the adoption of our Probate Code (see G. S. 1878, c. 49, § 13, subd. 4, and c. 56, § 18), wherein the former was continued, and the latter dropped, and nothing substituted for it. Why this was done, or why an appeal is now given from interlocutory orders of the probate court where only $20 is involved, and denied in cases of final decrees assigning the residue of the estate of decedents, which involve the construction of wills and the statute of descent, also in many cases the transmission of great fortunes, leaving the aggrieved parties to the imperfect remedy of certiorari, we need not inquire. It is not our province to do so. We must accept the law as we find it, and not attempt any judicial legislation to supply supposed omissions.

The judgment in question was not appealable, and certiorari will lie to review it. This question was not called to the attention of the court in the cases of In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115, and In re Terry's Estate, 58 Minn. 268, 59 N. W. 1013.

The only question on the merits of this case relates to the construction of the will of Katherina Will, the material provisions of which are in these words:

"That is to say, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to wit: To my beloved husband, Ignatius Will, all my real estate during the term of his natur-

al life, and after his death to be divided equally among my children, Frederick J. Will and Minka E. Will, share and share alike. Also, all my personal estate, of whatever nature it may be, I give and bequeath to my above-named husband, to enable him to collect all moneys due to me, and appropriate the same to the best of his abilities. None of my children, or their heirs, shall have any right on my residue property until the death of my beloved husband, Ignatius Will."

The testatrix died August 2, 1892, leaving, her surviving, her husband and her son and daughter, the devisees in the will. The daughter, Minka E. Will, sometimes called M. Julia Will, died testate, unmarried and without issue, August 21, 1894. The relator is her sole devisee. The husband and father died intestate August 6, 1895; that is, about one year after the death of his daughter. On June 7, 1897, the probate court made its final decree, assigning the entire real estate of Katherina Will to the son, Frederick J. Will, to the exclusion of the relator, the devisee under the will of Minka E. Will, upon the ground that the latter's rights in the real estate under her mother's will were contingent, and were cut off by her death before that of her father. The district court held, in effect, that each of the children took by the will a vested fee in remainder, on the death of the mother, and hence the daughter died seised in fee of the undivided one-half of the real estate, subject to the life estate of the father, which on her death, by virtue of her will, vested in her devisee, the relator.

The district court was correct. It is apparent upon the face of the mother's will that it was written by a layman, and that it is not necessary to resort to any technical rules as to vested and contingent remainders to ascertain the intention of the testatrix. All that is necessary is to take the will by the four corners, and read it, in a common-sense way, from the standpoint of the testatrix. So reading it, the intention is clear. The testatrix intended to, and did, give to her husband a life estate in her real estate, and the remainder in fee to her two children. And being solicitous that her husband should not be disturbed in the enjoyment of his life estate by her children or their heirs, she added the unnecessary provision that none of them should have any right on the property until the death of her husband; that is, that until his death they must keep

off and not disturb him. This same will was, in effect, construed in accordance with the views here expressed in the case of Will v. Sisters, 67 Minn. 335, 69 N. W. 1090. We therefore hold that Minka E. Will died seised of an undivided one-half of her mother's real estate, subject to her father's life estate, which passed by her will to her devisee, the relator herein.

Order affirmed.